## 9397

### LA TOURETTE v. McMASTER, STATE INS. COM'R.

#### (89 S. E. 398.)

1. INSURANCE—REGULATION.—Insurance is a business affected with such public interest that it may be regulated by the State under the power to legislate for the common good.

2. CONSTITUTIONAL LAW — INSURANCE — PRIVILEGES AND IMMUNITIES OF CITIZENS—LICENSES—INSURANCE BROKERS.—Act approved March 2, 1916, by section 1, defining an insurance broker as one licensed by the Insurance Commissioner to represent citizens of the State in placing insurance with insurers licensed in the State or in any other State or country, and by section 2 providing that only such persons may be licensed as are residents of the State and have been licensed insurance agents of the State for at least two years, considered with the provisions of the act and other acts regulating insurance, requiring the books and accounts of such brokers to be always open to the inspection of the Insurance Commissioner, requiring brokers to exercise due care in placing insurance and making them liable to indictments for violations of the laws regulating insurance and for disobedience of the lawful orders of the commissioner, does not violate Const. U. S., art. IV, sec. 2, entitling the citizens of each State to all privileges and immunities of citizens in the several States.

3. CONSTITUTIONAL LAW—"PRIVILEGES AND IMMUNITIES."—Under Const. U. S., art. IV, sec. 2, entitling citizens of each State to all privileges and immunities of citizens in the several States, the term "privileges and immunities" means those privileges and immunities which are in their nature fundamental, which belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several States, and includes protection by the government, the enjoyment of life and liberty, the right to acquire and possess property and to pursue happiness and safety, subject to such restraints as the government may justly prescribe for the general good.

4. CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—"CITIZENSHIP"— "RESIDENCE."—"Citizenship" and "residence" are not the same thing, nor does one include the other.

FOOTNOTE.—Fire insurance as a business affected by a public interest, see notes in 29 L. R. A. (N. S.) 1195, 55 L. R. A. (N. S.) 1915c, 1189; as to constitutionality of requirement that holder of liquor license must be resident of State, se notes in 16 L. R. A. (N. S.) 1033.

In the Original Jurisdiction.

Petition by Philip La Tourette for a writ of mandamus requiring Fitz Hugh McMaster, as Insurance Commissioner, to issue to him a license as an insurance broker.    Petition refused.

*Messrs. John L. McLaurin* and *R. H. Welch,* for petitioner, cite: *As to definition of brokers:* 16 A. & E. Enc. of L. 970; and submit: *That sec. 2 of the act of March 2, 1916, — Stats. at Large —, attempts to deny to him, a bona fide citizen and resident of the State of New York, privileges and immunities which are granted to, the citizens of this State; that the State has undertaken to abridge the privileges and immunities granted to him as a bona fide citizen of the State of New York; that the State has undertaken to deprive him of liberty and property without due process of law, and has denied to him the equal protection of the law;* and cite: U. S. Const., art. IV, sec. 2, and 14th Am. Const. of S. C. 1895, art. I, sec. 5; 83 U. S. 36; 111 U. S. 746; 79 U. S. 418; 51 Ky. 212; 133 U. S. 107; 172 U. S. 239; Cooley, Const. Lim. (7th ed.) 567; 148 Pa. St. 482; 33 Am. St. Rep. 842; 94 Me. 192; 80 Am. St. Rep. 386; 75 S. C. 62; 37 Fla. 564; 33 L. R. A. 290; 167 Ill. 425.   *Provisions of act severable:* 76 S. C. 35.

*Mr. Attorney General Peeples,* for respondent, cites: *Insurance business subject to police regulation:* 233 U. S. 389; L. R. A. 1915c., 1189; 164 Pa. St. 306; 44 Am. St. Rep. 306; 25 L. R. A. 250; 92 S. C. 81, 87, 93.   *Business of insurance brokers:* 155 U. S. 648-657; 173 Mass. 121. *No discrimination based on citizenship:* 31 S. C. 435; 32 S. C. 344.

*Mr. W. H. Townsend,* also for respondent.

June 27, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The petitioner, who is a citizen and resident of the State of New York, prays for a writ of mandamus, requiring the respondent, as Insurance Commissioner of this State, to issue to him a license, as an insurance broker, under the terms of an act, approved March 2, 1916, entitled, "An act to provide for the licensing of insurance brokers." The first section of the act declares an insurance broker to be such person as shall be licensed by the Insurance Commissioner to represent citizens of this State in placing insurance with insurers licensed in this State or in any other State or country. The second section prescribes the terms and conditions upon which insurance brokers may be licensed. Among these, it is provided that:

"Only such persons may be licensed as are residents of this State and have been licensed insurance agents of this State for at least two years."

The petitioner has complied, or offered to comply, with all the terms and conditions of the act, except those prescribed in the provision above quoted, and for his failure to comply with those his application was refused. The sole question is whether that provision of the act is void, on the ground that it discriminates against citizens of other States in favor of citizens of this State, in violation of the provision of section 2, art. IV, of the Federal Constitution, to wit:

"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

It is well settled that insurance is a business affected with such public interest that it may be regulated by the State under the power to legislate for the common good. *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915c, 1189. That being so, the

power may be exerted to the extent necessary to make proper regulation effective, provided constitutional rights are not infringed.

There are numerous reasons why regulation of the business could be made more effective by requiring all brokers and agents soliciting business in the State to be residents of the State. It is important for the protection of the interests of the people of the State that the business should be in the hands of competent and trustworthy persons. It is one of many complications, requiring, for its safe conduct, not only expert knowledge, but such knowledge as can be acquired only by experience in the business. Brokers residing within the State would naturally be in better position to ascertain the character of risks—physical and moral —than those residing in other States. By the terms of this act and others regulating the business, the books, papers, and accounts of such brokers are at all times to be open to the inspection of the commissioner, who is given supervisory control of the business for the protection of the insured as well as the insurers. Now, without question, such supervision can be exercised over brokers residing in the State more expeditiously, advantageously, and effectively than if they resided in many different States of the Union, and the commissioner can more readily ascertain whether they have the requisite skill and ability and are faithful in the performance of their duties and obey the laws of the State. Moreover, they are required to exercise due care in placing insurance, and would be personally liable for neglect of that duty. They are also liable to indictment for violations of the laws of the State regulating the business and for disobeying the lawful orders of the commissioner with respect thereto. It is therefore desirable, if not imperatively necessary for the proper regulation of the business, that they should be residents of the State and subject to the jurisdiction of its Courts. These conclusions are sufficient to show that the provision in question is reasonable.

But, however cogent may be the reasons for it, it cannot be sustained if it violates the Constitution. We need not consider the extent of meaning of the words "privileges and immunities" used in the provision of the Constitution invoked. It will be sufficient to show that by the provision of the act in question, citizens of this State are granted no privilege by reason of citizenship alone that may not be as freely enjoyed by the citizens of any other State of the Union upon the same terms and conditions; that is all that the Constitution requires. In *Corfield* v. *Coryell,* 4 Wash. C. C. 371, Fed. Cas. No. 3230, Mr. Justice Washington, discussing the meaning of the words "privileges and immunities," says:

"The inquiry is, What are the privileges and immunities of citizens in the several States? We feel no hesitation in confining these expressions to those privileges and immunities which are, in their nature, fundamental, which belong, of right, to the citizens of all free governments, and which have, at all times, been enjoyed by the citizens of the several States which compose this Union, from the time of their becoming free, independent, and sovereign. What these fundamental principles are it would perhaps be more tedious than difficult to enumerate. They may, however, be all comprehended under the following general heads: Protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety; *subject nevertheless to such restraints as the government may justly prescribe for the general good of the whole.*" (Italics added.)

The meaning of this provision of the Constitution was also considered in the Slaughterhouse cases, 83 U. S. (16 Wall.) 36, 77 (21 L. Ed. 394), where the Court says:

"The constitutional provision there alluded to did not create those rights, which it called privileges and immunities of citizens of the States. It threw around them in that

clause no security for the citizen of the State in which they were claimed or exercised. Nor did it profess to control the power of the State governments over the rights of its own citizens. Its sole purpose was to declare to the several States that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction."

The principle decided in these cases has been followed in numerous subsequent decisions of the Federal Supreme Court. Under the terms of this act, a citizen of any State of the Union who is a resident of this State and has been a licensed insurance agent of this State for at least two years may obtain a broker's license; on the other hand, a citizen of this State, who is not a resident of the State and has not been a licensed insurance agent of this State for two years, may not be licensed. No discrimination is made on account of citizenship. It rests alone on residence in the State and experience in the business.

Citizenship and residence are not the same thing, nor does one include the other. *Cummings* v. *Wingo,* 31 S. C. 427, 435, 10 S. E. 107, and authorities cited. But our conclusion is not rested upon the mere use of the word "residents;" for no doubt it might appear from the purpose and scope of an act that "residents" was used in the sense of "citizens." If so, the Court would so construe it; and in no event would the Court sanction an evasion of the purpose and intent of this wise and wholesome provision of the Constitution based on mere verbiage. But there is nothing in the act to suggest any such intention. On the contrary, the words "residents" and "citizens" are both used, each apparently in its ordinary legal sense, which is well defined and understood, making a distinction which is substantial in its purpose and one that is sanctioned by the highest judicial authority.

For the reasons above stated, the petition is dismissed.